UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  22-20080-CR-ALTMAN

UNITED STATES OF AMERICA,

     Plaintiff,

v.

DARIBEL SANCHEZ,

     Defendants.

_____/

## SENTENCING MEMORANDUM

Defendant, Daribel Sanchez, respectfully submits this Sentencing Memorandum, in which he seeks to demonstrate to the Court that a sentence of sixty-three (63) months is sufficient to satisfy the sentencing imperative set forth in 18 U.S.C. §3553(a).

There are strong mitigating factors that establish this is atypical conduct in the life of Daribel.  Particularly, Daribel's limited involvement in the conduct and the fact that he immediately accepted responsibility for his conduct.  Moreover, Daribel is unlikely to ever reoffend.  a lengthy prison sentence will not serve as a deterrent to him or others, instead it will only embolden those largely responsible for drug trafficking to continue to hide and build barriers between themselves and vulnerable individuals.

**THE SECTION 3553(a) FACTORS**

In light of the factors set forth herein, we respectfully urge the Court to impose a sentence of sixty-three (63) months, which is sufficient – but not greater than necessary – to satisfy the factors outlined in 18 U.S.C. §3553(a).  *See Kimbrough v. United States*, 552 U.S. 85, 101 (2007).

**I.      History and Characteristics of Leon**

Daribel lived a life of poverty and necessity from the moment he was born. Daribel never had a father.  His mother left him at the age of four to move to the United States.  She never returned for him.  Daribel was left with his maternal grandmother.  When Daribel was 15 years old, his grandmother moved to the United States.  Once again, Daribel was abandoned by his care givers.  At the young age of 15 years, Daribel was forced to become financially responsible.  He bounced around family members' homes until he was fully independent.

Daribel found work as a fisherman.  He excelled and eventually worked for a company that took tourists deep-sea fishing.   Daribel's salary was $200 a month. Unfortunately, tragedy struck in 2019 when Daribel was involved in a fatal accident. While at sea, he accidentally ran over a co-worker.  The co-worker passed away from his injuries.  Daribel was terminated from his job.  He could not find work for the next two years.  He supported himself with odd jobs, fishing, and cleaning boats for fishermen.  It was a very difficult time because he had difficulty supporting his

family, including a minor son.  During this time, despite the struggles, Daribel did not resort to any illegal conduct.

In late 2021, tragedy struck again.  Daribel was expecting a daughter with his girlfriend.  The pregnancy was high risk and his girlfriend required surgery to save the baby and herself.  Daribel grew desperate, which resulted in his participation in the charged conspiracy.

## II.     The Nature and Circumstances of the Offense

### a.     The Offense

The conduct underlying the offense took place over a couple of weeks between December 2021 and February 2022.  Daribel was approached to assist as a skipper in the transport of drugs from Colombia to Dominica Republic.  Daribel had no knowledge or control over the amount of the cocaine being transported.  He had no knowledge of the operation.  He didn't even know who was involved.  Daribel agreed to participate because he was desperate and the promise of money to save his girlfriend and daughter was sufficient to disregard the risk and potential consequences of his conduct.

Upon his agreement to engage in the conspiracy, Daribel was taken in a boat to Colombia where he was left in a vacant home for several weeks.  Daribel had no contact with his family.  Next, Daribel was told to get ready for the journey.  He was taken to the boat with his two co-defendants, whom he had just met, and sent off to

3

the Dominican Republic.  Daribel's job was to make sure the boat remained fueled. The boat never it made it to the Dominican Republic.  It was intercepted at sea. Daribel never received any payment.

### b.   Daribel has no Criminal History

This is Daribel's first offense.  Courts have routinely taken the absence of criminal history into account when seeking to fashion a just sentence.  *See e.g., United States v. Chase*, 560 F.3d 828, 831 (8th Cir. 2009) (noting that "Chase's lack of criminal history, even though already taken into account in calculating his advisory guideline range, could nevertheless have formed the basis for a variance."); *United States v. Williams*, 662 Fed. Appx. 366, 377 (6th Cir. 2016) (affirming a below-guidelines sentence – despite the severity of Ms. Williams's offense – was motivated primarily by Ms. Williams's lack of criminal history and her low risk of recidivism."); *United States v. Toback*, No. 01 Cr. 410, 2005 WL 992004 (S.D.N.Y. April 14, 2005) (granting downward variance in part because "[t]he instant offense is Toback's first criminal conviction.").

### c.   Remorse and Acceptance of Responsibility

Upon interception by the United States Coast Guard, Daribel immediately provided a complete and accurate statement regarding his participation in the underlying conduct.  Immediately upon meeting with undersigned counsel, Daribel made clear that he was guilty of the offense in the Indictment and wanted to plead

guilty.  Following the Court's decision on Daribel's motion to dismiss based on jurisdiction, Daribel took the appropriate steps to plead guilty.  Daribel had no ability to cooperate.  The true "king pins" responsible for the drug trafficking and those that stood to make the most money from the conduct purposely shielded themselves by placing vulnerable individuals like Daribel in the direct line of fire.  The "king pins" placed multiple layers between the individuals transporting the drugs and themselves, so there could be no cooperation.

Daribel's conduct was limited.  He was sent on a mission about which he knew little and from which he stood to profit very little.  See *Kimbrough v. United States*, 552 U.S. 85, 86 (2007) ("In developing Guidelines sentences for cocaine offenses, the Sentencing Commission employed the statute's weight-driven scheme, rather than its usual empirical approach based on past sentencing practices."); *See also United States v. Diaz*, 11-CR-00821-2 JG, 2013 WL 322243, at *1, *7 (E.D.N.Y. Jan. 28, 2013) ("[T]he Guidelines ranges for drug trafficking offenses elevate all offenders – no matter their role in the offense – to those categories so long as the offense triggers the threshold quantities of heroin, cocaine, or crack.  Moreover, by scaling punishment for greater and lesser quantities of drugs according to the ADAA's mandatory minimums, the Guidelines ranges increase the severity of drug trafficking sentencing ranges overall.  As a result, the vast majority of federal drug offenders who are neither managers nor leaders are subjected to the harsh sentencing

scheme that Congress intended only for those who occupy such roles."); *United States v. Dossie*, 851 F. Supp. 2d 478, 481 (E.D.N.Y. 2012) ("Drug quantity is a poor proxy for culpability generally and for a defendant's role in a drug business in particular.").

### III.   The Kinds of Sentences Available in the Most Effective Manner.

Daribel, given the nature of the offense and the fact that he has no prior criminal history, would ordinarily be eligible for assignment to a camp.  However, because Daribel is a deportable alien without status in this country he does not qualify for a minimum-security camp and is not entitled to any relief from the First Step Act.  *See* Alan Ellis, Securing a Favorable Federal Prison Placement, The Champion (July 2015).  Daribel will be designated to a higher security prison with more controls and less privileges.  Daribel is ineligible to participate in prison programs that are otherwise available to non-aliens, such as home detention, community confinement, and work release.  He is unable to avail himself of opportunities that would otherwise shorten the length of his sentence, including reductions for completion of the Residential Drug Abuse Program ("RDAP"), and serving the last six (6) months of his sentence at a halfway house.  *See* 28 C.F.R. 550.58(a)(1)(i) (Categorically excluding INS detainees from early release after successful RDAP completion); 18 U.S.C. 3632(d)(4)(D) (categorically excluding deportable aliens from earning time credit pursuant to the First Step Act).  Moreover,

Daribel's incarceration will be followed by an additional period of custody in an immigration detention facility while he navigates removal hearings.

Moreover, as a non-citizen, Daribel will be deported to the Dominican Republic upon the completion of his sentence. While this Court is limited from departing downwards based on Daribel's immigration consequences alone, *United States v. Velour*, 83 F.3d 380 (11 Cir. 1986) overruled on other grounds, this Court can nevertheless consider the extraordinary impact that a guideline range sentence would have on Daribel as a non-citizen when justifying a variance.

Most significantly, Daribel has already been subjected to a greater level of punishment than other similarly situated defendants. Daribel has not seen his family in almost a year. He did not witness the birth of his daughter and has never met her or even seen her over video conferencing. He will not see his family again until he returns to the Dominican Republic.

After spending several days in the high seas with the United States Coast Guard, Daribel was sent to FDC without the possibility of bond. He spent 15 days in quarantine, which was the equivalent of maximum confinement due to COVID-19. In addition to the initial quarantine, he has been through two more quarantines due to COVID. FDC has mandated several twenty-hour lock downs making even legal visits close to impossible. These are atypical conditions.

## IV.  Arriving at a Sentencing

### A. Safety Valve

The Government and the PSR agree that Daribel meets the criteria for safety valve as set forth in 18 U.S.C. 3553(f)(1-5).  As such, the Court is authorized to impose a sentence below the statutory minimum mandatory sentence.

### B. Mitigating Role Reduction

Daribel requests a mitigating role reduction.  Daribel was simply a deck hand in charge of refueling the go-fast boat.  He did not know where the drugs were going, the quantity of drugs involved, or anything else about the operation.  It is also of note that Daribel was not to participate or share in the proceeds of this multi-million-dollar operation.  He was set to receive a small fee, which he did not.

Application Note 3(A) now specifies that, when determining mitigating role, the defendant is to be compared with the other participants "in the criminal activity." Thus, the relative culpability of the "average participant" is measured only in comparison to those persons who actually participated in the criminal activity, rather than against "typical" offenders who commit similar crimes. In measuring a defendant's relative culpability, Application Note 3(C) lists five factors a court may consider in deciding to grant this request as follows:

> In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:

(i)      the degree to which the defendant understood the scope and structure of the criminal activity;

(ii)      the degree to which the defendant participated in planning or organizing the criminal activity;

(iii)      the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv)      the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v)      the degree to which the defendant stood to benefit from the criminal activity.

For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.

The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

*See* Application Note to 3(C) of U.S.S.G. Section 3B1.2 (Nov. 2016 ed.)

Daribel's facts fit squarely within the factors in Application Note to 3(C).

The government objects to a mitigating role reduction and cites to *United States v. De Varon,* 175 F. 3d 930 (11th Cir. 1999).  The *De Varon* Court opined that §3B1.2 does not automatically preclude a defendant from consideration for a mitigating role reduction when a defendant is held accountable for a particular quantity of drugs that he or she handled pursuant to USSG § 1B 1.3. The *De*

9

*Varon* court established a two-part test in order to determine whether a defendant qualifies for a role reduction. *Id*. at 934. Initially, the court opined that the district court must measure the particular defendant's role against his or her relevant conduct under USSG §3B1.3. *Id.* at 940-940. The second part of the two-part test directs the district court to compare the defendant's culpability relative to the other participants in the "criminal scheme attributed to the defendant" where there is sufficient record evidence. *Id.* The legislative history of USSG Appendix C, Amendment 635 which is after *De Varon* provides that when considering an adjustment under §3B1.2 **<u>a court must consider the defendant's role in the relevant conduct for which the defendant is held accountable at sentencing against the role of the other participants whether they are charged or not.</u>** This same amendment also defines participant as a person who is criminally responsible for the commission of the offense but need not have been convicted." USSG §3B1.1, comment (n.1).

The purpose of the mitigating role adjustment was designed to ensure that the low-level participants in a conspiracy do not receive the same sentence as other persons or "participants" higher up in the conspiracy pyramid.  The sentence the government seeks for Daribel makes no distinction between the deck hands and the drug owners and managers that evaded arrest in this case.  The drug owners and managers cannot be equal participants or equally situated to Daribel.

Importantly, in *De Varon,* the Eleventh Circuit stated: [W]e do not create a presumption that drug couriers are never minor or minimal participants, any more than that they are always minor or minimal. Rather, we hold only that the district court must assess all of the facts probative of the defendant's role in her relevant conduct in evaluating the defendant's role in the offense. *De Varon,* 175 F.3d at 943. *See also United States v. Boyd,* 291 F.3d 1274, 1277 (11th Cir. 2000). This language from *De Varon* was ratified in the commentary added to § 3B1.2 in November of 2001, which stated that a defendant "who is convicted of a drug trafficking offense, whose role in that offense was limited to transporting or storing drugs and who is accountable under section 1B 1.3 only for the quantity of drugs the defendant personally transported or stored is not precluded from consideration for an adjustment under this guideline." *See* U.S.S.G. App. C. amend. 635 (2001); USSG §3B1.2, comment. (n.3(A)).

Alternatively, if the Court is not inclined to find that Daribel was a minor participant, Daribel requests that the Court grant a downward variance based on the 18 U.S.C. 3553 factors articulated in this motion.

*C. Proposed Sentence*

For the Court's convenience, the table below provides the guideline computation advanced by the government and that advanced by undersigned counsel.

11

|  | Government Proposed Guidelines | Daribel Proposed Guidelines |
|---|---|---|
| **Base Level Offense** | 36 | 34 |
| **Safety Valve** | -2 | -2 |
| **Adjustment for Role** | 0 | -2 |
| **Decrease in Base Level (2D1.1(a)(5)(B)(ii))** | 0 | -2 |
| **Acceptance of Responsibility** | -3 | -3 |
| **Total Offense Level** | 31 (108-135 months) | 25 (63-78 months) |

## VI.   Conclusion

For the reasons stated herein, Daribel submits that a sentence of sixty-three months is reasonable and sufficient for the charged conduct.

Dated: December 23, 2022

Respectfully submitted,

TACHE, BRONIS AND DESCALZO, P.A.
150 S.E. Second Avenue, Suite 600
Miami, Florida 33131
Telephone:   (305) 537-9565
Facsimile:   (305) 537-9567

By:   */s/ Marissel Descalzo*
        Marissel Descalzo, Esq.
        Florida Bar No. 669318
        mdescalzo@tachebronis.com
        service@tachebronis.com
        *Counsel for Daribel Sanchez*

12

## **CERTIFICATE OF SERVICE**

I CERTIFY THAT on this 23rd day of December, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ Marissel Descalzo*
Marissel Descalzo, Esq.